Opinion filed September
30, 2010

 

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00076-CR 

                                                    __________

 

                             CECIL
CLAYTON WEEMS, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                  On
Appeal from the County Court at Law

                                                           Brown
County, Texas

                                                    Trial
Court Cause No. 0800499

 



 

                                                                  O
P I N I O N

            The
jury convicted Cecil Clayton Weems of driving while intoxicated.  The trial
court assessed appellant’s punishment at confinement for 180 days in the Brown
County Jail.  We affirm.

Issues
on Appeal

            Appellant
presents two issues for review.  In his first issue, he contends that the
prosecutor improperly commented during closing argument on his failure to
testify.  In his brief, appellant has failed to identify any alleged error
committed by the trial court in connection with his first issue.  In the trial
court, appellant moved for a mistrial and, later, moved for a new trial on the
ground that the prosecutor had commented on his failure to testify.  The trial
court denied both motions.  Therefore, we construe appellant’s first issue to
be that the trial court erred in denying his motion for mistrial and his motion
for new trial.  In appellant’s second issue, he challenges the legal and
factual sufficiency of the evidence to support his conviction.

Sufficiency
of the Evidence Standards of Review

            To determine if the evidence is legally
sufficient, the appellate court reviews all of the evidence in the light most
favorable to the verdict and determines whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Laster v.
State, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009); Jackson v. State,
17 S.W.3d 664, 667 (Tex. Crim. App. 2000).  To determine if the evidence is
factually sufficient, the appellate court reviews all of the evidence in a
neutral light. Laster, 275 S.W.3d at 519; Watson v. State, 204
S.W.3d 404, 414 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1,
10-11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407-08
(Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim.
App. 1996).  Then, the reviewing court determines whether the evidence
supporting the verdict is so weak that the verdict is clearly wrong and
manifestly unjust or whether the verdict is against the great weight and
preponderance of the conflicting evidence.  Watson, 204 S.W.3d at
414-15; Johnson, 23 S.W.3d at 10-11.  The jury, as the finder of fact,
is the sole judge of the weight and credibility of the witnesses’ testimony.  TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art.
38.04 (Vernon 1979).

The Evidence at Trial

            The record shows that a
one-vehicle accident involving a Ford pickup occurred in rural Brown County in
the area where County Road 270, County Road 257, and Farm-to-Market Road
2525 intersect.  On April 5,
2008, at about 4:14 a.m., EMS personnel were dispatched to attend to a possible
snake bite victim at a residence on a county road in Brown County.  Christopher
Michael Bennington and his partner responded to the call.  While they
were on their way to the residence, they came upon the scene.  Bennington said
that the pickup was “off the road into the trees.”  Bennington testified that
the area in question consisted of a tree-lined dirt road that had ditches on
both sides.  The EMS personnel stopped to see whether anyone was inside the
pickup.  They determined that no one was in the pickup or in the area, and they
reported the accident to the Brown County Sheriff’s Department.  The EMS
personnel had not seen anyone along the road as they had driven to the accident
scene.  They continued their trip to attend to the possible snake bite victim. 
As they approached the residence, they did not see anyone along the road.

            Bennington
and his partner arrived at the residence at 4:41 a.m.  The accident involving
the pickup had occurred about four-tenths of a mile from the front entrance
gate of the residence.  Appellant was lying down on the front porch of the residence. 
He told the EMS personnel that a snake had bitten his leg and that the snake
was still in his pants.  Appellant was holding onto his left pants leg with
both hands and believed that he was holding the snake. Eventually, Bennington
cut off appellant’s pants.  Bennington testified that there was no snake in
appellant’s pants.  An examination of appellant revealed that he had not been bitten
by a snake.  Instead, appellant had cactus thorns in his leg.  Bennington
testified that appellant was “a little confused and disoriented” and that
appellant gave “somewhat confused and vague answers.”  Appellant said that his
name was “Cecil Clayton.”

            Brown
County Deputy Sheriff Kelly Ray Marsh received a call to assist the EMS
personnel at the residence on County Road 257.  Deputy Marsh drove by the
accident scene on his way to the residence, and he did not see anybody in the
area.  Deputy Marsh described the area as “very rural” and fenced-in “pasture
land and ranch land.”  Deputy Marsh then proceeded to the residence.  He said
that appellant’s speech was very slurred.  Deputy Marsh asked appellant his
name a number of times.  Appellant responded but Deputy Marsh could not
understand him.  When Deputy Marsh asked appellant for his driver’s license, he
had difficulty finding it in his wallet.  Deputy Marsh said that appellant dug
through his wallet and “pass[ed] over his driver’s license about three times”
before finding the license with Deputy Marsh’s help. Appellant’s driver’s
license indicated that he lived on Hickory Street.  Deputy Marsh testified that
appellant was unable to get up by himself or to stand on his own.  Deputy Marsh
said that appellant kept saying that he had been “out for a walk.”

Appellant
wanted to get checked out at the hospital, and the EMS personnel transported him
to the emergency room at the Brownwood Regional Medical Center.  Appellant
arrived at the hospital at 5:25 a.m.  Stephen Ross Nichols, M.D., an emergency
room physician, examined him.  Dr. Nichols testified that appellant was
agitated and had an irrational thought that a snake had crawled up into his
pants and bitten him.  The medical records indicate that appellant had
“decreased mental status,” was “off balance,” and had “involuntary movements.” 
Dr. Nichols said that appellant was slow to respond to commands and gave
inappropriate responses.  While at the hospital, appellant tested positive for
methamphetamine and tetrahydrocannabinol (THC). Dr. Nichols testified that THC
is a metabolic derivative of marihuana and that “THC” is a common abbreviation
for marihuana.  He said that methamphetamine is a stimulant that is classified
as a controlled substance.  He also said that stimulant abuse commonly causes irrational
thoughts, delusional thoughts, and hallucinations.  Dr. Nichols diagnosed
appellant with substance abuse.  Dr. Nichols concluded that appellant’s use of
methamphetamine and marihuana caused his irrational thoughts and that appellant
had lost the normal use of his mental faculties.

            Deputy
Marsh went to the accident scene.  He said that a pickup had been crashed into
a group of trees.  He said that a name badge in the pickup had the name “Cecil”
on it.  Deputy Marsh believed that only one person was in the pickup when the
accident occurred.  He said that there were blankets in the front passenger
seat and several items of clothing in the backseat. Deputy Marsh said that
there were two properties between the accident scene and the residence where
appellant was found.  He said that the front entrance gates to both of these
properties were locked.

           Department
of Public Safety Trooper Kyle Wayne Cook was dispatched to the accident scene. 
He arrived at the scene at 6:29 a.m.  He spoke with Deputy Marsh when he
arrived.  Trooper Cook said that an insurance card that was found in the pickup
showed the owner of the pickup to be “Karen Kay Keel.”  Trooper Cook determined
that Keel was the registered owner of the pickup.  Keel is appellant’s mother. 
On the date of the accident, she lived at 714 Hickory Street in Brownwood.  Trooper
Cook concluded that, based on his investigation, the driver was the only person
in the pickup when the accident occurred.  He arrived at this conclusion
because the driver’s side door was unlocked, the passenger’s side door was
locked, the driver’s airbag deployed, and the passenger’s airbag did not
deploy.

Trooper
Cook testified that he went to the hospital to interview appellant about the
accident.  Trooper Cook said that appellant was slow to answer questions.  He
said that appellant stuttered, slurred his speech, and gave evasive answers.  When
appellant realized that Trooper Cook was a police officer, appellant did
not want to have anything to do with him.  Appellant refused to provide a blood
sample upon Trooper Cook’s request.  Trooper Cook said that Keel came to the
hospital.  Appellant did not want Keel to talk with Trooper Cook.  Trooper Cook
said that, at one point, when the blood-pressure cuff on appellant’s arm
activated, appellant “jumped forward, lunged and screamed like a paranoid
person would do.”  Trooper Cook also testified that, in general, individuals
who are under the influence of methamphetamine are “[v]ery paranoid, jumpy, [and]
quick to react” and “don’t think logically.”  He said that individuals who use
methamphetamine “lose control of their mental and physical faculties.”

            Keel
testified that she owned the pickup that was involved in the accident.  Keel
said that appellant typically drove the pickup and that he had it on the night
of the accident.  She said that appellant called her at 1:00 or 1:30 a.m. on the
night of the accident.  At that time, appellant was “a little upset,” and he thought
that someone was following him.  Keel said that appellant called her again
later and said that he needed her “to send those people.” Keel responded,
“Okay, what people?”  Appellant then said, “No, you weren’t there.”  Keel then asked
appellant, “Are you still driving?”  Appellant responded, “No,” and also said
that he was “out of the vehicle.”  Keel believed that appellant told her that
he was in the woods.  Keel testified that she had not had any conversations
with appellant about whether he was driving the pickup when the accident
occurred.

Analysis

            To
obtain a conviction for driving while intoxicated, the State must prove that
the defendant operated a motor vehicle in a public place while intoxicated.  Tex. Penal Code Ann. § 49.04(a) (Vernon
2003).  The State need not establish the precise time of an accident or of the defendant’s
driving to prove the offense of driving while intoxicated.  Kuciemba v.
State, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010); Kennemur v. State,
280 S.W.3d 305, 314 n.8 (Tex. App.—Amarillo 2008, pet. ref’d); Zavala v.
State, 89 S.W.3d 134, 139 (Tex. App.—Corpus Christi 2002, no pet.). 
However, the State must establish “a temporal link between the defendant’s intoxication
and his driving.”  Kuciemba, 310 S.W.3d at 462.  Thus, there must be
proof from which the jury can conclude that, at the time of the driving in
question, whenever that may have been, the defendant was intoxicated. Zavala,
89 S.W.3d at 139.  A conviction for driving while intoxicated can be supported
solely by circumstantial evidence.  Kuciemba, 310 S.W.3d at 462.  Being
intoxicated at the scene of a traffic accident in which the defendant was the
driver is some circumstantial evidence that the defendant’s intoxication caused
the accident, and the inference of causation is even stronger when the accident
is a one-car collision with an inanimate object.  Id.

            Appellant
contends that the evidence was legally and factually insufficient to establish
that he operated a motor vehicle.  He also contends that, if the evidence was
sufficient to establish that he operated a motor vehicle, the evidence was
legally and factually insufficient to establish that he operated a motor
vehicle while intoxicated.

            Appellant’s
mother, Keel, owned the pickup.  Keel testified that appellant typically drove
the pickup and that he had it on the night of the accident.  Appellant called
Keel at 1:00 or 1:30 a.m.  At that time, appellant believed that someone
was following him.  In the later phone call, Keel asked appellant whether he
was still driving.  Appellant responded that he was not driving and was “out of
the vehicle.”  The evidence showed that the accident occurred in a “very rural”
area.  Appellant was found about four-tenths of a mile from the accident scene. 
The police officers and EMS personnel did not see anyone else at the accident
scene or in the surrounding area.  The evidence was legally and factually
sufficient to establish that appellant was driving the pickup and, therefore,
operating a motor vehicle when the accident occurred.                 

            In
the jury charge in this cause, the trial court defined “intoxicated” as “not
having the normal use of one’s physical or mental faculties by reason of the
introduction of a controlled substance, a drug, or a dangerous drug into the
body.” See Tex. Penal Code Ann.
§ 49.01(2)(A) (Vernon 2003).  At the hospital, appellant tested positive
for methamphetamine and marihuana, which are both controlled substances.  See
Tex. Health & Safety Code Ann. §
481.032 (Vernon 2010).  Dr. Nichols diagnosed appellant with substance abuse.  Dr.
Nichols attributed appellant’s irrational thoughts to his use of
methamphetamine and marihuana, and Dr. Nichols said that appellant had lost the
normal use of his mental faculties.  Trooper Cook’s testimony supports the
conclusion that appellant had lost the normal use of his mental faculties as a
result of his use of methamphetamine and marihuana.  Trooper Cook said that appellant
stuttered, slurred his speech, and gave evasive answers at the hospital. 
Trooper Cook also testified about appellant’s reaction to the blood-pressure
cuff activating.

            The
State presented evidence that appellant lost the normal use of his mental and
physical faculties for a lengthy period of time.  Appellant had the irrational
thought about a snake crawling into his pants and biting him when the EMS
personnel attended to him at the residence.  Appellant also thought that the
snake was still in his pants and that he was holding it. Appellant was confused
and disoriented, and his speech was slurred at the residence.  Deputy Marsh
said that appellant could not get up by himself or stand on his own.  Keel’s
testimony supports a reasonable inference that appellant lost the normal use of
his mental faculties before the accident occurred.  According to Keel,
appellant thought that he was being followed at 1:00 or 1:30 a.m.  Later,
appellant told Keel that he was no longer driving and that he needed her “to
send those people.”

            Based
on the evidence, the jury could have reasonably concluded that appellant
operated the pickup in a public place while not having the normal use of his
physical or mental faculties by the reason of the introduction of
methamphetamine or marihuana into his body.  The evidence established a
temporal link between appellant’s driving and his intoxication.  We conclude
that the evidence was legally and factually sufficient to support his
conviction.  Appellant’s second issue is overruled.                  

Prosecutor’s
Statements During Closing Argument

            In
his first issue, appellant contends that the trial court erred in denying his
motion for mistrial and motion for new trial because the prosecutor commented
on his failure to testify.  A comment on a defendant’s failure to testify
offends the Texas and United States Constitutions, as well as Texas statutory
law.  U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 38.08
(Vernon 2005).  A prosecutor’s comment amounts to an impermissible comment on a
defendant’s failure to testify only if, when viewed from the jury’s standpoint,
the comment is manifestly intended to be, or is of such character that a
typical jury would naturally and necessarily take it to be, a comment on the
defendant’s failure to testify.  Cruz v. State, 225 S.W.3d 546, 548
(Tex. Crim. App. 2007); Bustamante v. State, 48 S.W.3d 761, 765 (Tex.
Crim. App. 2001).

            Appellant
contends that the following statements made by the prosecutor constituted comments
on his failure to testify: 

        (1) Sometimes
the only person who is an eye-witness is the person who committed the crime,
and we’re not allowed to call them as the State, and they have a right not to
testify and the State – and you can’t hold that against them, but we can still
as a State prosecute them and prove that they committed a crime, and we can do
that by looking at circumstantial evidence.

 

       (2) The only
one who can testify to it directly, the law doesn’t allow us to even consider
whether or not he testifies.

 

        (3) The only
person who can tell us the truth is the person who wouldn’t cooperate.  He
wouldn’t cooperate with the police for a reason, because he knew that if he
told the police the truth, they would arrest him on the spot and he would
definitely be convicted.

 

        Now, you may
say, well, you know, he was intoxicated at the time.  He was paranoid.  Of
course, he doesn’t want to talk to the police.  But, it’s been nine months
since then.  He could have given them any information about who that driver
was, and he hasn’t cooperated with them since then.  This is all about taking
responsibility, and he doesn’t want to do that.

 

            Appellant’s
counsel did not object to these statements, request an instruction to disregard
the statements, or move for a mistrial during the prosecutor’s closing
argument.[1] 
Instead, after the jury retired to deliberate, appellant’s counsel moved the
trial court for a mistrial on the ground that “[t]he prosecutor made several
references to [appellant] not testifying.”  The trial court denied appellant’s
motion.  Later, appellant complained of the prosecutor’s closing argument in a
motion for new trial.  The trial court also denied that motion.

            If
the harm caused by an improper jury argument is incurable, a motion for
mistrial is sufficient to preserve error for appellate review.  Cruz,
225 S.W.3d at 548; Young v. State, 137 S.W.3d 65, 70 (Tex. Crim. App.
2004).  However, to preserve error, a motion for mistrial must be timely.  Griggs
v. State, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007).  A motion for
mistrial is timely only if it is made as soon as the grounds for it become
apparent.  Id.

            In
this cause, the ground for appellant’s motion for mistrial became apparent
during the prosecutor’s closing argument.  However, appellant failed to move
for a mistrial until after the prosecutor had concluded her closing argument.  As
such, appellant’s motion for mistrial was untimely and failed to preserve his first
appellate issue for review.  Id.  Appellant’s first issue is overruled. 
                                    

            Assuming
that appellant preserved his first issue for review, we conclude that the trial
court did not err in denying his motion for mistrial and his motion for new
trial.  We review a trial court’s denial of a motion for mistrial under an
abuse of discretion standard.  Archie v. State, 221 S.W.3d 695, 699
(Tex. Crim. App. 2007); Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim.
App. 2004).  We review a trial court’s denial of a motion for new trial under the
same standard. Salazar v. State, 38 S.W.3d 141, 148 (Tex. Crim. App.
2001).  

            Appellant
complains about the prosecutor’s statement that “we’re not allowed to call them
as the State, and they have a right not to testify and the State -- and you
can’t hold that against them.”  The prosecutor made this statement in the context
of explaining that the State may use circumstantial evidence and is not
required to present eyewitness testimony to prove that an individual committed
a crime.  Appellant also complains about the prosecutor’s statement that “[t]he
only one who can testify to it directly, the law doesn’t allow us to even
consider whether or not he testifies.”  The trial court’s jury charge contained
the following instruction regarding appellant’s election not to testify:  

        Our law
provides that a defendant may testify in his own behalf if he elects to do so. 
This, however, is a privilege afforded to a defendant, and, in the event he
elects not to testify, that fact cannot be taken as a circumstance against
him.  In this case, the Defendant has elected not to testify, and you are
instructed that you cannot and must not refer or allude to that fact throughout
your deliberations or take it into consideration for any purpose whatsoever as
a circumstance against the defendant.[2]

 

In the complained-of
comments, the prosecutor essentially restated the trial court’s instructions to
the jury.  She reminded the jury that it could not consider appellant’s
election not to testify.  The prosecutor recognized appellant’s right not to
testify; she did not comment negatively on appellant’s failure to testify. 
Therefore, the prosecutor’s statements did not amount to improper comments on
appellant’s failure to testify.  Fuentes v. State, 991 S.W.2d 267, 275
(Tex. Crim. App. 1999); Bullard v. State, 706 S.W.2d 329, 331 (Tex. App.—Houston
[14th Dist.] 1986, pet. ref’d).

            Appellant
also complains about the prosecutor’s statement that “[t]he only person who can
tell us the truth is the person who wouldn’t cooperate.”  As set forth above,
immediately after this statement, the prosecutor stated that “[appellant]
wouldn’t cooperate with the police for a reason.”  The prosecutor then made
additional statements about appellant’s failure to cooperate with the police. 
Trooper Cook’s testimony supports the conclusion that appellant would not
cooperate with the police.  Trooper Cook said that, once appellant realized he
was a police officer, appellant did not want to have anything to do with him.  Appellant
also did not want Keel to talk to Trooper Cook.  Viewed in context, the complained-of
statement by the prosecutor relates to appellant’s lack of cooperation with the
police rather than his failure to testify.  As such, the statement did not
constitute an impermissible comment on appellant’s failure to testify.  The
prosecutor did not impermissibly comment on appellant’s failure to testify. 
Therefore, assuming that appellant preserved error, we conclude that the trial
court did not abuse its discretion in denying appellant’s motion for mistrial
and his motion for new trial.

              We
also conclude that the trial court did not err in denying appellant’s motions
for another reason.  Except in the most blatant instances, an instruction to
disregard a comment on the defendant’s failure to testify will cure any harm
caused by the comment.  Moore v. State, 999 S.W.2d 385, 405-06 (Tex.
Crim. App. 1999).  If a defendant fails to request an instruction to disregard
and the instruction would have cured any harm, the trial court does not abuse
its discretion in denying a motion for mistrial.  Young, 137 S.W.3d at 72. 
Even if the prosecutor’s statements in this cause amounted to comments on
appellant’s failure to testify, they were not so blatant that they would have
rendered an instruction to disregard ineffective.  Moore, 999 S.W.2d at
405-06.  Because appellant failed to request an instruction to disregard, the trial
court did not abuse its discretion in denying his motions.  Young, 137
S.W.3d at 72.

This
Court’s Ruling

            The judgment of the
trial court is affirmed.

 

 

                                                                                    TERRY
McCALL

                                                                                    JUSTICE


September 30, 2010

Publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.

 









                [1]In an affidavit in support of appellant’s motion for
new trial, appellant’s counsel explained that he had not objected during
closing argument to the prosecutor’s statements because he had not heard them. 
If appellant’s counsel could not hear the prosecutor’s closing argument, he should
have requested relief from the trial court.  The trial court, among other
things, could have instructed the prosecutor to talk louder or permitted
appellant’s counsel to move to a place in the courtroom where he could hear the
prosecutor’s argument.                                      

 

 





                [2]The trial court’s written jury charge contained a
typographical error.  It stated “what purpose whatsoever” instead of “any
purpose whatsoever.”  The trial court corrected the instruction when it read
the instructions to the jury.